UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------
                                    )
IN RE:                              )    CASE NO. 09-22027 (ASD)
                                    )
JOHN ARTHUR JACQUES,                )    CHAPTER 7
                                    )
        DEBTOR.                     )    Re: ECF NO. 28
---------------------------------------------------

APPEARANCES:

John Arthur Jacques                              Pro Se

Lamya A. Forghany, Esq.                          Former[1] Attorney for
Forghany & Associates                            Debtor
406 Farmington Avenue
Farmington, Connecticut 06032

Benjamin R. Plourd, Esq.                         Attorneys for
Patrick W. Boatman, Esq.                         Petitioning Creditor
Law Offices of Patrick W. Boatman LLC            Donna Rockwell
111 Founders Plaza Suite 1000
East Hartford, CT 06108

Charles J. Popple, Esq.                          Attorney for Creditor
727 Main Street                                  Glenn Ostrager
P.O. Box 497
Willimantic, CT 06898

**MEMORANDUM OF DECISION
(1) DENYING DEBTOR'S MOTION TO DISMISS INVOLUNTARY PETITION,
(2) DENYING DEBTOR'S MOTION TO CONVERT INVOLUNTARY CHAPTER 7
CASE TO VOLUNTARY CHAPTER 13 CASE,
(3) DISMISSING DEBTOR'S COUNTERCLAIMS WITHOUT PREJUDICE AND
(4) DENYING REQUEST FOR INDEMNITY BOND**

---

[1]Attorney Forghany's Motion to Withraw as [Debtor's] Counsel, ECF No. 69, was granted on July 22, 2010. ECF No. 71.

ALBERT S. DABROWSKI, United States Bankruptcy Judge

## I. INTRODUCTION

In the matter before the Court, the Debtor, John Arthur Jacques (hereafter, the "Debtor") seeks to convert an involuntary petition commenced against him under Chapter 7 of the Bankruptcy Code to a voluntary petition pursuant to Chapter 13. In the alternative to conversion, the Debtor requests dismissal of the involuntary petition alleging that the involuntary petition was filed against him by petitioning creditor Donna Rockwell (hereafter, "Rockwell") improperly and in bad faith because, *inter alia*, the underlying debt is contingent and subject to a bona fide dispute, and the petition was filed by less than three creditors. The Debtor also seeks via a counterclaim against Rockwell damages for embarrassment and defamation in the amount of $500,000.00, and an order requiring Rockwell to post a bond to indemnify the Debtor.

In response to the Debtor's requests, two creditors, Rockwell and Glenn Ostrager (hereafter, "Ostrager") assert, *inter alia*, that the Debtor should not be permitted to convert to Chapter 13 as he has acted and continues to act in bad faith, and is ineligible for relief under Chapter 13 pursuant to the secured debt ceiling of 11 U.S.C. § 109(e).

As more fully discussed hereafter, and because the Debtor is ineligible to be a debtor under Chapter 13 due to the amount of his secured debt, the Debtor's request to convert to Chapter 13 shall be denied. Furthermore, the Court finds that the Debtor has failed to meet his burden of establishing that the involuntary petition was filed in bad faith. Accordingly, insofar as the Debtor seeks dismissal of the involuntary petition, such relief

2

shall be denied. Finally, because the Debtor's counterclaims of embarrassment and defamation are impermissible in the context of an answer to an involuntary petition pursuant to Fed. R. Bankr. P. 1011(d), the counterclaims shall be dismissed without prejudice, and his request for an indemnity bond shall be denied.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(A) and (C).

## III. PROCEDURAL AND FACTUAL BACKGROUND

On July 20, 2009, Rockwell commenced the present bankruptcy case by filing an involuntary Chapter 7 petition against the Debtor, seeking the repayment of loans she issued to the Debtor and claiming an amount due of $68,000.00. Involuntary Petition, ECF No. 1. The Debtor responded to the involuntary petition on August 6, 2009, by filing his Answer with Counterclaim, ECF No. 9, wherein the Debtor raises several defenses as to the eligibility of Rockwell to file the involuntary petition. In his first defense, the Debtor avers that he has twelve or more qualifying creditors, thereby requiring an involuntary petition be filed by three or more such creditors pursuant to 11 U.S.C. § 303(b)(1). In his second defense, the Debtor alleges that Rockwell holds a claim that is contingent or in bona fide dispute, thereby precluding her from filing the involuntary petition under 11

3

U.S.C.§§ 303(b)(1) and 303(h)(1). Finally, in his third defense, the Debtor alleges that he is "generally paying the debtor's debts as such debts become due excluding debts in a bona fide dispute." In addition, and based upon his belief that Rockwell was not eligible to file the involuntary petition, the Debtor asserts a counterclaim in the amount of $500,000 alleging that Rockwell filed the petition in bad faith, which "has caused debtor embarrassment and has defamed [him]," and requests an indemnity bond. Id. at ¶ 12; Motion in Opposition to Creditor's Objections to Convert, ECF No. 59.

On April 5, 2010, the Debtor filed a Motion to Convert Involuntary Chapter 7 to Voluntary Chapter 13 (hereafter, the "Motion"), ECF No. 28, wherein he *realleges* his defenses to the involuntary petition and seeks to convert the involuntary Chapter 7 petition to a voluntary Chapter 13 petition. Following an April 29, 2010, hearing on the Motion, the matter was taken under advisement with the Debtor to file requisite Statements and Schedules by May 7, 2010, followed by the filing of written objections by the creditors by May 21, 2010, and a responsive pleading by the Debtor to be filed by May 28, 2010.

In accordance with the above schedule, Schedules and Statements were filed on May 4, 2010, ECF Nos. 31- 35. On May 19, 2010, Ostrager filed an Objection to Motion to Convert Chapter 7 to Chapter 13 Proceeding, ECF No. 43, and an accompanying Memorandum in Support of Objection . . ., ECF Nos. 45 & 46 (hereafter collectively, the "Ostrager Objection"). The Ostrager Objection alleges, *inter alia*, that on the Debtor's bankruptcy schedules, the Debtor "includes ownership of several properties he does not own, . . . overstates the values of these properties and understates debts" thereon, Ostrager Objection, ECF No. 45, p. 3, and that these inaccuracies falsely imply that the

4

Debtor has the financial means to complete a chapter 13 repayment plan. The crux of the Ostrager Objection is that the Debtor's conduct evidences fraud and bad faith, and that the Debtor's conversion should be denied on such grounds.

Rockwell filed her own objection on May 20, 2010. <u>Objection to Debtor's Motion to Convert . . .</u>, (hereafter, the "Rockwell Objection"), ECF No. 47. The Rockwell Objection urges, *inter alia*, that the conversion of the Debtor's bankruptcy case be denied because the Debtor is not eligible to be a debtor under Chapter 13 of the Bankruptcy Code by virtue of his secured debt in excess of $1,010,650.00, the statutory limit set forth in 11 U.S.C. § 109(e). In addition, the Rockwell Objection alleges that the Debtor coerced her to transfer and/or quitclaim certain properties in exchange for promissory notes, that several of these transfers are invalid or unenforceable for various deficiencies and therefore are improperly listed on the Debtor's schedule of real property, and that the Debtor's conduct constitutes bad faith, warranting a denial of conversion to Chapter 13.

On June 11, 2010,[2] the Debtor filed a responsive pleading captioned <u>Motion in Opposition to Creditor's Objections to Convert</u> (hereafter, the "Response"), ECF No. 68.[3] The Court now resolves the issues raised in these pleadings.

## IV. DISCUSSION

### A. The Involuntary Petition Shall Not Be Dismissed

---

[2] The May 28, 2010 deadline for the Debtor's filing of a responsive pleading was extended to June 11, 2010. *See* ECF No. 50.

[3] In the Response the Debtor asserted, *inter alia*, that the Involuntary Petition was filed in bad faith and should be dismissed, with prejudice, for several reasons, including an assertion that "the requisite number of petitioning creditors is short of the three required under 11 U.S.C. §303(b), and no exception to the required number of entities exists," Response, para. 1, and "[i]n the alternative to dismissal " that he be permitted to convert to Chapter 13. Response, para. 3.

5

Involuntary bankruptcy cases are governed by Section 303 of the Bankruptcy Code, which provides in pertinent part:

> (a) An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person . . . that may be a debtor under the chapter under which such case is commenced.
>
> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title--
>
>> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>>
>> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $13,475 of such claims;
>
> * * *
>
> (c) After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.
>
> * * *

11 U.S.C.A. § 303 (West 2008).

The Second Circuit has held that "[w]hether an alleged debtor is properly before the bankruptcy court in an involuntary case is a threshold determination." Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC), 330 F.3d 111, 118 (2d Cir. 2003). The burden is on petitioning creditors to prove compliance with the jurisdictional requisites of Section 303. See In re Palace Oriental Rugs, 193 B.R. 126, 128 (Bankr. D. Conn. 1996) (citing 2 Collier on Bankruptcy ¶ 303.15[7], p. 303-80 (15th ed. 1995)).

### *1. The Number of Petitioning Creditors Is Sufficient*

If twelve or more creditors meet the criteria of section 303(b)(1), an involuntary petition must be filed by three or more of them. Conversely, if there are fewer than twelve eligible creditors, Section 303(b)(2) permits one or more of them to file the involuntary petition, provided that the unsecured portion of the petitioning creditors' aggregate claims comprise at least $13,475.00. By singularly filing the involuntary petition, Rockwell essentially warranted that there were less than twelve eligible creditors of the Debtor, and that she held unsecured claims against the Debtor totaling at least $13,475.00.[4] Even assuming, *arguendo*, that Ostrager is eligible to join the involuntary petition as a petitioning creditor pursuant to Section 303(c), this joinder merely increases the total number of petitioning creditors to two, and does not alter the petitioning creditor calculus.

The Debtor asserts that he has twelve or more creditors, and that consequently one (or two) is an insufficient number of petitioning creditors required to file an involuntary petition pursuant to 11 U.S.C. § 303(b)(1). Although the burden is on the petitioning creditor to establish the jurisdictional requisites of Section 303, In re Palace Oriental Rugs, supra, these jurisdictional requisites do not include the need for the petitioning creditor to demonstrate the number of creditors of a debtor's estate. See In re Barth, 109 B.R. 570, 574 (Bankr. D. Conn. 1990) ("The number of petitioning creditors is unrelated to the issue of the court's subject matter jurisdiction, and a lack of the requisite number of petitioning creditors does not deprive the court of jurisdiction to enter an order for relief.") Rather, the

---

[4] By the Debtor's own admissions on his Schedule D, filed May 4, 2010, Rockwell has claims against him that are unsecured in the amount of $37,800.00, satisfying the requisite amount of unsecured debt under Section 303(b).

burden is on the debtor to support an allegation that he has twelve or more creditors. In re Rothery, 143 F.3d 546, 549 (9th Cir. 1998).

Because "a single entity, under appropriate circumstances, is expressly permitted by statute to commence an involuntary petition," 2 Collier on Bankruptcy ¶ 303.14[1], p. 303-44 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.), it is both logical and just to place the initial burden upon the debtor to contest the number of petitioning creditors, particularly in light of the debtor's superior ability to ascertain the number of parties to which he is indebted. The Federal Rules of Bankruptcy Procedure contemplate disputes concerning the requisite number of petitioning creditors in an involuntary case, and require a debtor who contests the number of creditors to do so via Rule 1003, which states, in pertinent part:

> (b) If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file *with the answer* a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as provided in § 303(b) of the Code, the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon.

Fed. R. Bankr. P. 1003(b) (2008) (emphasis added).

Although the involuntary petition was filed by fewer than three creditors, and the Debtor filed an answer averring the existence of twelve or more creditors, Answer with Counterclaim, ECF No. 9, the Debtor failed to comply with Bankruptcy Rule 1003(b) by filing, *with the answer*, a list of all creditors to properly refute the implication that less than twelve creditors exist. "Compliance with [Bankruptcy] Rule 1003(b) is a condition precedent to the burden shifting to the petitioning creditor." In re Green, 2007 WL

1093791 at *8 (Bankr. W.D.Tex. 2007). The Debtor claims in his answer to have attached a list of all creditors in a document labeled Exhibit A. However, the record before the Court reflects the absence of any Exhibit A filed with the answer. Consequently, the Debtor has failed to satisfy his burden, pursuant to Fed. R. Bankr. P. 1003(b), that he has twelve or more creditors.[5]

Therefore, this Court finds that the express permissibility of a single eligible creditor to file an involuntary petition in appropriate circumstances, coupled with the failure of the Debtor to timely and properly contest the number of eligible creditors, did not preclude the Petitioning Creditor from filing the involuntary petition.

### 2. The Underlying Debt is Not Contingent As To Liability

The Debtor raises as a second defense that Rockwell holds a contingent claim. The petitioning creditor bears the burden of demonstrating that the underlying debt is "not contingent as to liability." 11 U.S.C.A. § 303(b) (West 2008). While the Bankruptcy Code does not define the term "contingent," the Second Circuit has explained that

> [a contingent claim is] one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.

B.D. Int'l Disc. Corp. v. Chase Manhattan Bank, N.A. (In re B.D. Int'l Disc. Corp.), 701

---

[5] In response to the Debtor's failure to file a list of creditors with his answer, Rockwell filed on August 7, 2009, a *Motion for Order Requiring Creditor List*, ECF No. 10. On August 14, 2009, the Debtor belatedly filed a list of creditors, ECF No. 15, which Debtor's counsel acknowledged was still "incomplete." *Hearing Tr.,* August 27, 2009, at 11:14:44. Subsequently, the Debtor filed a first amended list of creditors, ECF No. 16, on September 9, 2009, over a month after the list was due under Fed. R. Bankr. P. 1003(b), and a second amended list of creditors, ECF No. 19, on October 1, 2009, nearly two months after the list was due.

F.2d 1071 (2d Cir. 1983), *cert. denied*, 464 U.S. 830 (1983) (quoting In re All Media Props., 5 B.R. 126, 133 (Bankr. S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir.1981)). See also Matter of Bowers, 16 B.R. 298, 300 (Bankr. D.Conn. 1981) ("A contingent claim is one where liability attaches upon the occurrence of a future event.").

Rockwell has provided the Court with various exhibits accompanying the Rockwell Objection in support of her claims against the Debtor. After careful review of the record, the Court finds that Rockwell has satisfied her burden of proving sufficient noncontingent claims. Specifically, Rockwell has demonstrated noncontingent claims in connection with promissory notes executed by the Debtor in exchange for quitclaims of real property located at 87 Deepwood Drive, 70 Park Road, and 61 Wildwood Road. These claims were rendered noncontingent when the Debtor defaulted on payment.[6] "Promissory notes in default . . . are not claims that are contingent as to liability." 2 Collier on Bankruptcy ¶ 303.10[1], at p. 303-25 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citing In re Mavelia, 149 B.R. 301, 304 (Bankr. E.D.N.Y. 1991)).

In contrast, Rockwell has failed to demonstrate that her claim in connection with 23 Rondalay Road was noncontingent as of the petition date because the record reflects that the first payment under the balloon mortgage note for this property was due on September 23, 2009, after the involuntary petition was filed, and was therefore not in default as of the petition date. Rockwell Objection, Exh. D. Therefore, the Debtor is technically correct that Rockwell holds a claim that was contingent as of the petition date.

---

[6]These defaults are further supported by the Debtor's *Statement of Financial Affairs*, ECF No. 34, wherein the Debtor, in response to Question #3, lists no payments to Rockwell in the ninety days preceding the commencement of the case. The only payments to Rockwell actually listed by the Debtor are four post-petition payments of $1500.00, for a total of $6,000.00.

Document      Page 11 of 19

However, even assuming, *arguendo*, that $6,000.00 was paid by the Debtor while in bankruptcy to Rockwell, fn. 6, supra, and regardless of whether this amount is recoverable as a preferential transfer and not included in Rockwell's claims for the purposes of an involuntary petition, Rockwell has nonetheless sufficiently demonstrated the existence of unsecured claims in excess of the statutory threshold of Section 303(b). In any event, the Debtor acknowledges in his schedules that he is liable to Rockwell for at least $37,000.00 in unsecured debt.

Similarly, Ostrager has met his burden of proving that his claims against the Debtor are noncontingent. The Debtor acknowledges Ostrager as a creditor on his Schedules, yet the Debtor's Statement of Financial Affairs, ECF No. 34, in response to Question #3, lists no payments to Ostrager in the ninety days preceding the commencement of this case. By virtue of the Debtor's own admissions in the Statement of Financial Affairs, and based upon the record before the Court, both Rockwell and Ostrager have satisfied their respective burdens of demonstrating sufficient claims that are noncontingent. With respect to each promissory note to Rockwell or Ostrager upon which the Debtor defaulted, the Debtor's duty to pay became noncontingent upon the default. See, e.g. Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp., 266 B.R. 575, 582 (S.D.N.Y. 2001) (a claim that is contingent becomes noncontingent upon performance or breach); In re Mazzeo, 131 F.3d 295, 303 (2d Cir. 1997) ("A taxpayer's duty to pay taxes . . . arises upon his nonpayment of the taxes when due. The obligation to pay is not contingent on any extrinsic event.").

### 3. *No Bona Fide Dispute Exists As To Liability or Amount*

The Debtor raises as a second defense that the underlying debt is the subject of a

bona fide dispute as to liability or amount. The petitioning creditor also bears the burden of establishing this element. The Bankruptcy Code does not define "bona fide dispute." In construing this term, the Second Circuit adopted an objective test in In re BDC 56 LLC, supra, 330 F.3d 111 (2d Cir. 2003). The relevant test "requires, first, that the petitioning creditor establish a prima facie case that no bona fide dispute exists. Once a prima facie case has been established, the burden shifts to the debtor to demonstrate the existence of a bona fide dispute." Id. (citations omitted). "Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden." Id. at 118 (quoting Rimell v. Mark Twain Bank, 946 F.2d 1363, 1365 (8th Cir. 1991)).

The Second Circuit has held that within the context of Section 303(b), "[a] bona fide dispute exists where 'there is an objective basis for either a factual or a legal dispute as to the validity of [the] debt.'" In re Euro-American Lodging Corp., 357 B.R. 700, 714 (Bankr. S.D.N.Y. 2007) (quoting In re BDC 56 LLC, 330 F.3d at 117-18). "The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute." In re BDC 56 LLC, 330 F.3d at 118 (quoting In re Rimell, 946 F.2d 1363, 1365 (8th Cir.1991)).

Rockwell has sufficiently supported her assertion that the Debtor executed promissory notes to her, thereby incurring liability to pay those notes when they became due. Consequently, the burden shifts to the Debtor to refute the validity of the debt. "Congress has made clear that it intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal." In re DSC, Ltd., 486 F.3d 940, 945 (6th Cir. 2007) (internal quotations and citations

omitted). The Debtor has failed to establish a legitimate basis from which this Court could ascertain that the claims of Rockwell are invalid. As a result, Rockwell has satisfied her burden on this jurisdictional element of Section 303(b).

Ostrager has alleged that payments owing to him in connection with 23 Rondalay Road were in default for two years at the time the transfer was recorded on the land records. See, Ostrager Objection, ECF No. 45, p. 2. Ostrager further indicates therein that he filed a foreclosure action in connection with the property, and that Connecticut Superior Court Judge Bright denied the Debtor's Motion to Dismiss without prejudice, pending the resolution of this case before the Bankruptcy Court. Although Ostrager has not provided this Court with a certified copy of the Superior Court foreclosure complaint or the denial of the Motion to Dismiss, the Debtor's Schedules admit, rather than dispute, the existence of an unsecured liability to Ostrager of $49,100.00. For this reason, the Court determines that Ostrager has satisfied his burden of proving the existence of a valid claim, and that the Debtor has failed to refute the validity thereof.

### 4. *The Debtor is Generally Not Paying Debts As They Become Due*

In the context of an involuntary petition, the petitioning creditor also has the burden to prove, by a preponderance of the evidence, that the debtor is "generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C.A. § 303(h)(1) (West 2008). To determine whether a debtor is generally not paying his debts, this Court has explained its test as follows:

> The Court must first undertake a rough calculus of the number and amount of the Alleged Debtor's delinquent and current debts on the Petition Date.

The Court then utilizes the results of that calculus to determine if the ratio of delinquent to current debts is supportive of a pattern of "generally not paying".

In re Palace Oriental Rugs, Inc., 193 B.R. 126, 129 (Bankr. D.Conn. 1996).

According to the Debtor's schedules, Rockwell holds unsecured claims of between $37,800.00 and $43,800.00[7], representing slightly more than one-fourth of the Debtor's unsecured debt. In addition, the same schedules indicate that Ostrager holds an unsecured claim of $49,100.00. Taken together, the unsecured claims of these two creditors clearly represent a majority of the Debtor's unsecured debt. Even without the claims of Ostrager, the claims of Rockwell, coupled with the record of the Debtor's delinquent taxes and sewer bills (ECF No. 45, Exh. I) represent a sufficiently substantial fraction of the Debtor's total debts.

Furthermore, Ostrager has provided an appraisal report of the property located at 23 Rondalay Road, See Affidavit of Appraisal, ECF No. 45, Exh. D, raising the inference that the Debtor overvalued this particular property, as well as similar seasonal properties, on his schedules. Lowering the present value of each similar property on the Debtor's schedules has the effect of increasing the proportion of debt that is unsecured, and thereby further increasing the proportion of debt generally not being paid by the Debtor. In light of the foregoing, the Court determines that the present record is indicative of a pattern that the Debtor is generally not paying his debts as they become due.

### 5. The Involuntary Petition Was Not Filed in Bad Faith

Having determined that the petitioning creditor was eligible to file the involuntary

---

[7] The Debtor's Schedule D lists the unsecured portion of several of Rockwell's claims as "Unknown."

petition pursuant to Section 303(b), the Court now turns to the Debtor's argument that the petition be dismissed on the grounds that it was filed in bad faith. As a threshold matter, there is a presumption that an involuntary petition was filed in good faith. See, e.g., U.S. Fidelity & Guar. Co. v. DJF Realty & Suppliers, Inc., 58 B.R. 1008 (N.D.N.Y. 1986); In re E.S. Professional Services, Inc., 335 B.R. 221 (Bankr. S.D. Fla. 2005). Good faith is exemplified in the present matter by the aforementioned compliance of the petitioning creditor with the requisites of Section 303(b).

The Debtor bears the burden of showing, by a preponderance of the evidence, that the involuntary petition was filed in bad faith. Bad faith can be demonstrated by the following tests articulated by various courts: (1) the improper purpose test, (2) the improper use test, (3) the subjective test, (4) the objective test, (5) the subjective / objective hybrid test, and (6) the improper purpose / improper use hybrid test. See, Lubow Machine Co., Inc. et al, v. Bayshore Wire Products Corp., 209 F.3d 100 (2nd Cir. 2000) ; 2 Collier on Bankruptcy ¶ 303.16[1], p. 303-54 - 303-55 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). While the Debtor's Answer with Counterclaim alleges that the involuntary petition was filed in bad faith, the Debtor fails to adequately support this conclusory allegation therein, stating only that the petition was filed in bad faith based upon, *inter alia*, the petitioners' "disregard of the Bankruptcy Code and their failure to utilize their state court remedies." Answer with Counterclaim, ECF No. 7, ¶11. As this Court has noted, the petitioning creditor did not "disregard . . . the Bankruptcy Code," but rather complied with its provisions.

In the Motion, the Debtor relies upon the first test of bad faith articulated above,

15

alleging that "[t]he petitioner's filing equates to an improper purpose of debt collection." Motion, ¶ 8. The Second Circuit has noted that under the improper purpose test, "bad faith exists if the filing of the petition was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor." Lubow Machine Co., Inc. et al, v. Bayshore Wire Products Corp., 209 F.3d at 105 (citation omitted).  An involuntary petition filed with an improper purpose is evidence that the petition was filed in bad faith.  See, e.g., In re Grossinger, 268 B.R. 386 (Bankr. S.D.N.Y. 2001) (use of involuntary petition to obtain leverage in settlement of disputed claim evidences bad faith).

The burden of proving bad faith by a preponderance of the evidence is a heavy one, In re Reveley, 148 B.R. 398, 406 (Bankr. S.D.N.Y. 1992) (citations omitted), and the Debtor has failed to carry its weight. The Debtor has offered little more than conclusory allegations and no evidence from which this Court could make a finding that the involuntary petition was filed with ill will, malice, the intent to embarrass or harass the Debtor, or otherwise in bad faith.  Accordingly, because the involuntary petition was filed in good faith, and because the petitioning creditor complied with the applicable requisites of Section 303(b), the Debtor's Motion, insofar as it seeks dismissal of the involuntary petition, shall be **DENIED**.

## B. The Debtor is Not Eligible to Be a Debtor Under Chapter 13

Having determined that the involuntary petition shall not be dismissed, the Court now turns to the alternate relief sought by the Debtor - that the involuntary Chapter 7 petition be converted to a voluntary petition under Chapter 13. Conversion of a Chapter 7 bankruptcy case is governed by 11 U.S.C. § 706, which provides, in pertinent part:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
>
> * * *
>
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C.A. § 706 (West 2008).

The United States Supreme Court has held that there is no absolute right to convert a bankruptcy case from Chapter 7 to Chapter 13, highlighting the conditional language of Section 706(d). <u>Marrama v. Citizens Bank of Mass. et. al.</u>, 549 U.S. 365, 372 (2007) ("The words 'unless the debtor may be a debtor under such chapter' expressly condition[] [the debtor's] right to convert on his ability to qualify as a 'debtor' under Chapter 13."). To qualify under Chapter 13, a debtor must comply with the requirements set forth in 11 U.S.C. § 109(e), which provides:

> (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650 . . . may be a debtor under chapter 13 of this title.

11 U.S.C.A. § 109(e) (West 2008).

The Debtor's Schedule D lists his secured debt as $1,260,229.38, an amount exceeding the statutory limit of $1,010,650.00 by $249,579.38. As a result, the Debtor does not qualify to be a Chapter 13 debtor pursuant to section 109(e), and therefore may not convert his bankruptcy case to a voluntary Chapter 13 case. Accordingly, the Debtor's the Motion to Convert shall be **DENIED**.

Because the Court determines that the Debtor is ineligible to be a debtor under Chapter 13 based upon his scheduled amount of secured debt, the Court need not rule upon the alternate basis for denial of conversion sought by Rockwell – whether the Debtor's pre-petition or post-petition conduct constitutes bad faith.

## C. Counterclaims

Finally, the Court turns to the Debtor's counterclaim that the involuntary petition was filed in bad faith, representing defamation of and causing embarrassment to the Debtor. A counterclaim for embarrassment and defamation is improper in an involuntary proceeding. See, Fed. R. Bankr. P. 1011(d) ("A claim against a petitioning creditor may not be asserted in the answer except for the purpose of defeating the petition."); 2 Collier on Bankruptcy ¶ 303.20[3], p. 303-74 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("The debtor's . . . answer cannot include a counterclaim that leads to an affirmative judgment against the petitioning creditor; the only counterclaims that can be asserted are those necessary to defeat the involuntary petition."). Although this Court (Shiff, J.) has previously held that a counterclaim which asserts that an involuntary petition was filed in bad faith "clearly goes beyond defeating the petition," In re Contemporary Mission, Inc., 30 B.R. 369 (Bankr. D.Conn. 1983), the Bankruptcy Code expressly authorizes proximate or punitive damages "against any petitioner that filed the petition in bad faith." 11 U.S.C.A. § 303(i)(2) (West 2008).

However, as Section 303(i) indicates, damages thereunder for bad faith are only available "[i]f the court dismisses a petition under this section . . ." 11 U.S.C.A. § 303(i) (West 2008). "A claim in favor of an alleged debtor for costs, attorneys' fees and/or

damages under Section 303(i) ripens upon the dismissal of the involuntary petition." In re Palace Oriental Rugs, Inc., 193 B.R. at 126. Because the involuntary petition was not dismissed, see, Part IV, A, supra, these counterclaims are not ripe for resolution, and damages for bad faith are unavailable under this section and shall be denied. The Debtor's counterclaim shall be dismissed without prejudice, and the request for an indemnity bond shall be denied.

## V. SUMMARY AND CONCLUSION

For the reasons set forth above, the Motion, ECF No. 28, insofar as it seeks dismissal of the involuntary petition, and insofar as it seeks conversion of the involuntary Chapter 7 petition to a voluntary Chapter 13 petition, is **DENIED**; and the Debtor's counterclaim for damages, punitive damages, attorneys fees, and costs is **DISMISSED without prejudice**, and the request for an indemnity bond is **DENIED**. An order to this effect shall enter simultaneously herewith.

Dated: July 23, 2010                                      BY THE COURT

                                                          Albert S. Dabrowski
                                                          United States Bankruptcy Judge